Frank DeROGATIS, Trustee for the next of kin of Patricia DeRogatis, deceased, and Frank DeRogatis, individually, Plaintiffs,

v.

MAYO CLINIC, et al., Defendants.

No. C7–85–1861.

Supreme Court of Minnesota.

Aug. 8, 1986.

Thomas Tinkham, Steve J. Wells, Minneapolis, Robert M. Moore, Law Dept., Mayo Clinic, Rochester, for defendants.

Gary W. Goldsmith, Minneapolis, for plaintiffs.

COYNE, Justice.

The question relating to when the period of limitations governing a wrongful death action based on medical malpractice begins to run is before this court upon certification by the United States District Court, District of Minnesota pursuant to Minn. Stat. § 480.061 (1984).

The decedent Patricia DeRogatis underwent surgery on July 15, 1981 at St. Mary's Hospital in Rochester to replace an artificial valve originally implanted to relieve a congenital heart defect. She lapsed into a coma within hours of the completion of surgery and, while comatose, was discharged from St. Mary's on August 21, 1981 and transferred to a Miami, Florida hospital near her parents' residence. Her death occurred on September 18, 1982. While the parties disagree as to the accuracy and significance of this fact, the Federal District Court found that the decedent's father, the plaintiff, "did not know of the facts on which he bases his malpractice claims until a time subsequent to July 29, 1981."

Frank DeRogatis, as trustee for the decedent's next of kin and individually, filed a complaint in the Federal District Court on July 15, 1983 alleging a cause of action for wrongful death resulting from the medical malpractice of the defendants Mayo Clinic and St. Mary's Hospital, and their personnel.[1] The summons and complaint were received by the Olmsted County Sheriff on July 29, 1983 and were served on the defendants on that date and August 1, 1983. In August 1985, the defendants moved for dismissal under Fed.R.Civ.P. 12(b)(6) or, alternatively, for summary judgment pursuant to Fed.R.Civ.P. 56(c), contending primarily that the action is barred by the 2-year statute of limitations of Minn.Stat. § 541.07(1) (1984).

The Federal District Court has determined that an undecided question of law is involved and therefore has sought the assistance of this court in construing Minn. Stat. §§ 573.02, subd. 1 (1984) and 541.07(1) (1984) within the context of a wrongful death action predicated upon the alleged professional negligence of these defendants to define the time when the limitation period begins to run.

Minn.Stat. § 573.02, subd. 1 (1984) provides in pertinent part:

When death is caused by the wrongful act or omission of any person or corporation, the trustee appointed as provided in subdivision 3 may maintain an action therefor if the decedent might have maintained an action, had he lived, for an injury caused by the wrongful act or omission. An action to recover damages for a death caused by the alleged professional negligence of a physician, surgeon, dentist, hospital or sanatorium, or an employee of a physician, surgeon, dentist, hospital or sanatorium shall be commenced within the time set forth in section 541.07, subdivision 1. An action to

---

1. The amended complaint did not name individual defendants but alleged causes of action against the manufacturers of the artificial valve and oxygenator used during the surgical procedure. The claims against the manufacturers were dismissed with prejudice and, therefore, are not considered here.

recover damages for a death caused by an intentional act constituting murder may be commenced at any time after the death of the decedent. Any other action under this section may be commenced within three years after the date of death provided that the action must be commenced within six years after the act or omission.[2]

While the parties are in agreement that the 2-year limitation period of section 541.-07(1) is applicable to wrongful death actions based upon alleged medical malpractice, their polarized positions regarding the time the limitation period begins to run define the scope of our inquiry. Simply stated, the defendants urge the court to conclude that the period begins at the time the underlying medical malpractice claim accrued, while the plaintiff contends that logic suggests that because a wrongful death claim accrues on the date of death, the limitation period should begin to run on that date.

In *Dalton v. Dow Chemical Co.*, 280 Minn. 147, 158 N.W.2d 580 (1968), we held that an action for wrongful death would accrue at such time as it could be maintained without dismissal for failure to state a claim. In other words, such an action does not accrue until a death has occurred. The practical problem, however, the problem upon which the plaintiff focuses to demonstrate the illogic of construction, is that if the limitation period begins to run prior to the date of death, the right of the trustee to commence suit may well be extinguished before it arises. *See* Casenote, *Action for Wrongful Death—Statute of Limitations—Western Union Telegraph Co. v. Preston, 254 F. 229 (3d Cir.1918)*, 3 Minn.L.Rev. 429, 430 (1919).

The history of the wrongful death statute is colored by similar problems which have prompted our concern and scrutiny. For example, as early as 1883, this court construed Minn.Gen.St. c. 77, § 2 (1878), the wrongful death statute, as barring an action by a special administrator not commenced within the then 2-year limitation from the date of the wrongful act or omission. *Rugland v. Anderson*, 30 Minn. 386, 15 N.W. 676 (1883). Similarly, in *Cashman v. Hedberg*, 215 Minn. 463, 10 N.W.2d 388 (1943), this court concluded that the limitation period could not be extended by the tolling provisions of the statute of limitations relating to actions by administrators and confirmed the 2-year limitation without regard to the date letters of administration were granted. The effect of the decision was to bar the action even though the special administrator attempted commencement as soon as he was legally authorized to do so. Impressed by the doubtful wisdom and fairness of such a rule, we commended a proposed change to the careful consideration of the legislature.

After *Cashman* and before 1978, the legislature adopted only one major amendment to the limitation period, a 1951 amendment expanding the period from "2 years after the act or omission" to "3 years after the act or omission." Act of April 23, 1951, ch. 697, § 1, 1951 Minn. Laws 1215. However, in 1978 the legislature amended the statute so that (a) generally an action may be commenced "within three years after the date of death provided that * * * [it is] within six years after the act or omission" causing death, but (b) an action based on medical malpractice must be commenced "within the time set forth in section 541.07 * * *'" which in turn states that all actions for medical malpractice must be commenced within 2 years. Act of March 28, 1978, ch. 593, § 1, 1978 Minn. Laws 331.

In *DeCosse v. Armstrong Cork Co.*, 319 N.W.2d 45 (Minn.1982), an action involving an asbestos-related death, we dealt with the statute of limitations as it existed prior to the 1978 amendment, holding that the limitation period was subject to tolling if the plaintiff could establish that the defendants fraudulently concealed the facts underlying the cause of action. We recog-

---

**2.** The historical development of Minn.Stat. § 573.02 is detailed in *Fussner v. Andert*, 261 Minn. 347, 350–52, 113 N.W.2d 355, 357–58 (1961), cited in *Eisert v. Greenberg Roofing & Sheet-Metal Co.*, 314 N.W.2d 226, 228 n. 2 (Minn.1982).

nized, however, that in an ordinary case not involving fraudulent concealment, the possibility exists under both the 1976 and 1978 versions of the statute that a wrongful death action could expire before death triggers the right to bring the action. As we stated, "By the 1978 amendment the legislature * * * [was] expressing its intention to bar actions for some deaths caused by wrongful acts or omissions even if they are brought on day of death." 319 N.W.2d at 48.

In our view, the 1978 amendment had no other effect on the statute of limitations for wrongful death actions based on alleged medical malpractice than to reduce the period of limitations from 3 years to the 2 year limitation period in effect prior to 1951. This interpretation is supported by the legislative history of the 1978 amendment. The amending bill, as originally passed by the House, did not distinguish between wrongful death caused by medical malpractice and wrongful death from other causes. However, in the Senate, the bill was referred to the Judiciary Committee, where it was proposed that malpractice-based wrongful death be excluded from the general limitations period and instead be limited by a requirement that it "be commenced within 3 years after the act or omission." After re-referral, the current language of the statute was proposed, referencing section 541.07(1) for malpractice-based wrongful death actions. The Senate Committee hearing tapes indicate that this amendment was in response to substantial lobbying by the medical community, specifically one of these defendants. It is our view that the legislature did not intend that the limitation period for wrongful death actions based on medical malpractice commence on the date of death, but rather, at the same time the limitation period for the underlying claim of the decedent for medical malpractice commenced.

While the parties have suggested that this court, upon specific response to the certified question, need also address additional and related issues, we decline to do so and instead, limit this decision to the single question certified. In summary, we hold, in answer to the question certified, that the 2-year limitation period for a wrongful death action predicated on alleged medical malpractice begins to run not on the date of death but when the limitation period for the underlying claim of medical malpractice by the decedent began to run.

Certified question answered.