Gloria **TUTTLE**, as **Trustee** for the next-of-kin of Bill Tuttle, a.k.a. William R. Tuttle, deceased, Plaintiff,

v.

**LORILLARD TOBACCO COMPANY; National Tobacco Company, L.P.; Worldwide Sports and Entertainment, f.k.a. National Tobacco Management Company; National Tobacco Finance Corporation; The Pinkerton Tobacco Company; and the Smokeless Tobacco Council; Defendants.**

No. Civ. 99–1550 PAMJGL.

United States District Court, D. Minnesota, Sixth Division.

Sept. 28, 2000.

---

Martha Koch Wivell, Vincent Joseph Moccio, Robins Kaplan Miller & Ciresi, Minneapolis MN, for plaintiff.

David George Martin, Michael Robert Docherty, Mark Allen Mitchell, Rider Bennett Egan & Arundel, Minneapolis, MN, Jeffrey S Nelson, Nancy Jean Stewig, J. Patrick Sullivan, L. Christopher Wittman, Shook Hardy & Bacon, Kansas City, MO, for Lorillard Tobacco Co., Inc., defendant.

Steven J Kirsch, Murnane Conlin White & Brandt, St Paul, MN, for National Tobacco LP, National Tobacco Finance Corp., defendants.

Steven J Kirsch, Murnane Conlin White & Brandt, St. Paul, MN, David George Martin, Rider Bennett Egan & Arundel, Minneapolis, MN, Nancy Jean Stewig, Shook Hardy & Bacon, Kansas city, MO, for Lehman Brothers/GP, Inc., defendant.

Vincent Joseph Moccio, Robins Kaplan Miller & Ciresi, Minneapolis, MN, Steven J Kirsch, Murnane Conlin White & Brandt, St. Paul, MN, David George Martin, Rider Bennett Egan & Arundel, Minneapolis, MN, Nancy Jean Stewig, Shook Hardy & Bacon, Kansas city, MO, for Worldwide Sports and Entertainment, defendant.

Lawrence R King, Daniel John Trudeau, Shawn M Raiter, Daniel Loren Scott, Larson King, St Paul, MN, for Pinkerton Tobacco Co., defendant.

Geoffrey P Jarpe, Maun & Simon, Minneapolis, MN, for Smokeless Tobacco Council, Inc., defendant.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

This matter is before the Court on Defendants Worldwide Sports and Entertainment's and National Tobacco Finance Corporation's Motions to Dismiss for Lack of Personal Jurisdiction; Certain Defendants' Motion to Dismiss pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure; and the Smokeless Tobacco Council's Motion to Dismiss Pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. For the following reasons, the Court summarily dismisses National Tobacco Finance Corporation from this lawsuit, grants Worldwide Sports and Entertainment's Motion to Dismiss for Lack of Personal Jurisdiction, grants Certain Defendants' Motion to Dismiss, and grants Defendant Smokeless Tobacco Council's Motion to Dismiss.

## BACKGROUND

Plaintiff Gloria Tuttle's husband, Bill Tuttle ("Tuttle"), died of oropharynx and larynx cancer on July 27, 1998. Having first been introduced to smokeless tobacco in the summer of 1954, Tuttle chewed tobacco regularly throughout his adult life, quitting only upon being diagnosed with cancer in October 1993. Plaintiff believes that Tuttle's death was wrongfully caused by Defendants' negligent, misleading, and fraudulent conduct with respect to the design, manufacturing, marketing, and promotion of smokeless tobacco.

On September 21, 1999, Plaintiff, Trustee for Tuttle's next-of-kin, brought suit in Anoka County District Court alleging negligence, strict liability, breach of warranty, common law fraud, consumer fraud, unlawful trade practices, deceptive trade practices, and false advertising by all named Defendants. Defendants include smokeless tobacco manufacturers Lorillard Tobacco Co. ("Lorillard"), National Tobacco Co. ("National Tobacco"), and The Pinkerton Tobacco Company ("Pinkerton"); National Tobacco's former and current general partners Worldwide Sports and Entertainment ("Worldwide") and National Tobacco Finance Corporation ("NTFC"); and the manufacturers' trade association, the Smokeless Tobacco Council ("STC"). Defendants removed the case to federal court on October 13, 1999. Defendants Worldwide and NTFC now move

for dismissal for lack of personal jurisdiction. In addition, all Defendants have moved for dismissal under Fed.R.Civ.P. 12(b)(6) and 9(b).

## DISCUSSION

### A. Motions to Dismiss for Lack of Personal Jurisdiction.

■ Once a defendant has challenged a federal court's in personam jurisdiction, the plaintiff bears the burden of presenting a prima facie case that such jurisdiction exists. *See Aero Sys. Eng'g, Inc. v. Opron, Inc.*, 21 F.Supp.2d 990, 995 (D.Minn.1998). Where, as here, personal jurisdiction is challenged at the pretrial stage, all evidence must be viewed in the light most favorable to the plaintiff and all factual disputes must be resolved in the plaintiff's favor. *See id.* Doubts as to whether a court has personal jurisdiction over an individual or entity should be resolved in favor of retaining jurisdiction. *See Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 240 N.W.2d 814, 816 (1976); *Hunter–Keith, Inc. v. General Elec. Credit Corp.*, Civ. No. 4–84–804, 1987 WL 8592, at * 4 (D.Minn.1987).

■ The general test for deciding whether a federal court may exercise personal jurisdiction over a civil defendant is well-known. First, the court must determine whether the forum state's long-arm statute subjects the defendant to jurisdiction. Second, the exercise of jurisdiction must comport with the due process requirements of the Fifth Amendment. Where the relevant state long-arm statute extends as far as due process allows, as does Minnesota's, the two inquiries are codeterminate. *See* Minn.Stat. § 543.19; *Domtar, Inc. v. Niagara Fire Ins. Co.*, 533 N.W.2d 25, 29 (Minn.1995) (describing reach of Minnesota's long-arm statute). In order to satisfy due process, a defendant must have "minimum contacts [with the forum state] such that the maintenance

of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). The defendant's "contacts" with the forum state generally must not arise due to mere fortuity, but must arise because of the defendant's "purposeful availment" of the privilege of conducting activities in the state. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *see also Digi–Tel Holdings, Inc. v. Proteq Telecomm, Ltd.*, 89 F.3d 519, 522 (8th Cir.1996). Where the defendant has purposely directed activities at residents of the forum and the litigation results from "alleged injuries that 'arise out of or relate to' those activities," a finding of specific jurisdiction is appropriate.[1] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

Worldwide, formerly known as National Tobacco Management Company, is a Delaware corporation with its principal place of business in Los Angeles, California. Worldwide was the general partner of National Tobacco from April 1992 until May 17, 1996. (*See* Compl. ¶ 10.) NTFC, formed on October 25, 1995, became the general partner of National Tobacco on May 17, 1996. (*See id.* ¶ 11.) NTFC, also a Delaware corporation, has its principal place of business in New York, New York.

NTFC argues that it should be immediately dismissed from this lawsuit because it was not formed until two years after Tuttle stopped using smokeless tobacco, and therefore could not have contributed to Tuttle's injury. The allegations in Plaintiff's Complaint provide no insight into this obvious barrier to liability. Plaintiff ultimately addresses the issue in her

---

**1.** Because Plaintiff only raises theories of specific jurisdiction, the Court need not consider the doctrine of general jurisdiction.

memorandum in response to NTFC's motion to dismiss, in which she argues—without providing any legal support whatsoever—that NTFC is a proper defendant in this lawsuit as the mere continuation of the corporate structure that controlled National Tobacco when Tuttle used smokeless tobacco.

■ When considering a motion to dismiss, the Court looks only to the factual allegations in the complaint. Any allegations made in subsequent legal memoranda cannot correct inadequacies within a complaint. *See Morgan Distrib. Co., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir.1989) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984))). "To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without filing an amendment, and simply by raising a point in a brief." *Id.* (internal citations omitted). Because the face of Plaintiff's Complaint provides no basis for linking NTFC to this case, NTFC is summarily dismissed from this lawsuit with prejudice. The Court declines to grant Plaintiff leave to amend given the resounding inadequacy of the Complaint in this regard and given Plaintiff's failure to provide any legal support for her later presented theory that NTFC was in essence the corporate structure that controlled National Tobacco at times relevant to this lawsuit. The Court now turns to consider whether it may assert personal jurisdiction over Worldwide.

Worldwide denies that it has sufficient contacts with the State of Minnesota to be haled into court within its boundaries. Plaintiff acknowledges that Worldwide lacks direct physical contacts with Minnesota, but argues that jurisdiction is proper because "as National's general partner, Worldwide ... engaged in, among other things, the design, manufacture, marketing, distribution and promotion of smokeless tobacco, which it sold throughout the United States, including the states of Minnesota, Michigan and Missouri." (Compl.¶ 25.) In particular, Plaintiff maintains that this Court has jurisdiction over Worldwide under the stream of commerce theory and the *Calder* effects test.

■ Under the stream of commerce theory, due process is satisfied where a product manufacturer or distributor places a significant number of the product into the stream of commerce with knowledge that the product would be distributed into the forum state. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 107, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Similarly, under the *Calder* effects test, jurisdiction exists over a defendant who has engaged in conduct calculated to cause injury in the forum state. *See Calder v. Jones*, 465 U.S. 783, 789–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *see also Larson v. Dunn*, 460 N.W.2d 39, 43 (Minn.1990).

■ Because this Court has been presented with no allegations or evidence indicating that Worldwide itself had a direct and definable role in the design, manufacturing, distribution, or marketing of smokeless tobacco, or that it has any other contacts with Minnesota, the Court cannot make a finding of jurisdiction under either theory. Plaintiff acknowledges the lack of factual development in this regard, and requests that the Court exercise provisional jurisdiction over Worldwide so that the required contacts maybe revealed through discovery.

■ The decision to grant jurisdictional discovery is within the sound discretion of the District Court. *See Arch v. The American Tobacco Co.*, 984 F.Supp. 830, 841 (E.D.Pa.1997). "A Court may deny jurisdictional discovery where the plaintiff has failed to meet its burden of making out a threshold prima facie case of personal jurisdiction." *Id.* Such is the case here. While National Tobacco, the partnership

for which Worldwide was general partner, engages in the design, manufacturing, distribution, and marketing of smokeless tobacco, there is no allegation that Worldwide itself was directly involved in those activities. (*See* Compl. ¶ 25.) Absent such an allegation, or some other indication that Worldwide is independently subject to jurisdiction in this forum, there is no basis upon which to order jurisdictional discovery. Perhaps in light of this inadequacy, Plaintiff raises the argument that National Tobacco's contacts should be imputed to Worldwide, National Tobacco's claimed instrumentality. This is something the Court simply cannot do.

 Although a corporate entity may be disregarded, and its contacts imputed to its shareholders, *see Victoria Elevator Co. of Minneapolis v. Meriden Grain Co.,* 283 N.W.2d 509 (Minn.1979), the same is not true for partnerships, which, unlike corporations, have no juridical existence separate from their partners. As a result, while a partnership may be subject to jurisdiction on the basis of its partner's contacts with the forum, a partner cannot be subject to personal jurisdiction solely by virtue of the contacts of the partnership. *See Ytuarte v. Gruner + Jahr Printing and Publ'g Co.,* 935 F.2d 971, 972–73 (8th Cir.1991). Instead, jurisdiction over individual partners depends solely on each partner's relationship with the forum. *See Sher v. Johnson,* 911 F.2d 1357, 1365–66 (9th Cir.1990) (noting that even though liability of the partnership may establish liability over the partners, "[l]iability and jurisdiction are independent. Liability depends upon the relationship between the plaintiff and the defendants and between individual defendants; jurisdiction depends upon each defendant's relationship with the forum." (citing *Rush v. Savchuk,* 444 U.S. 320, 331–32, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980))).

Furthermore, there are no overriding equitable considerations weighing in favor of granting jurisdictional discovery. Simply put, the viability of Plaintiff's claim does not in any way depend upon keeping Worldwide as a Defendant. Without Worldwide, four defendants, all of which are unquestionably subject to jurisdiction in this forum, remain. Accordingly, Worldwide's Motion to Dismiss for lack of personal jurisdiction is granted.

## B. Certain Defendants' Motion to Dismiss Pursuant to 12(b)(6) and 9(b).

Through this motion, Defendants[2] seek to have the Court dismiss all but part of Plaintiff's Complaint. Since this motion was filed, Plaintiff has voluntarily dismissed her negligence and strict liability counts (insofar as they claim the existence of a manufacturing defect) as well as her implied warranty of fitness for a particular purpose claim. A discussion of the remaining issues follows.

For the purposes of Defendants' Motion to Dismiss, the Court takes all facts alleged in Plaintiff's Complaint as true. *See Westcott v. Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990). Further, the Court must construe the allegations in the Complaint and reasonable inferences arising from the Complaint favorably to Plaintiff. *See Morton v. Becker,* 793 F.2d 185, 187 (8th Cir. 1986). A motion to dismiss will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Id.; see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### 1. *Statute of Limitations.*

Defendants argue that Plaintiff's strict liability and implied warranty of merchantability claims are time-barred. There are two primary points of contention with respect to this issue. First, the

---

**2.** Defendants joining in this motion include Lorillard, National, Pinkerton, NTFC, and Worldwide. STC brings a separate motion to dismiss, which incorporates many of the arguments made by the manufacturing defendants and several additional arguments relating to STC's status as a non-manufacturing Defendant.

parties disagree as to the applicable statute of limitations. Second, the parties dispute the propriety of tolling the applicable limitations period.

Defendants assert that Plaintiff's claims are governed by the strict liability and implied warranty statutes of limitations, each of which carries a four year limitation period. *See* Minn.Stat. §§ 541.05, subd. 2, 336.2–725(1). The strict liability statute of limitations applies, "[u]nless otherwise provided by law, [to] any action based on the strict liability of the defendant and arising from the manufacture, sale, use or consumption of a product." Minn.Stat. § 541.05, subd. 2. The breach of warranty limitation provision provides that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Minn.Stat. § 336.2–725(1); *see also Mader v. American Motors Corp.,* 611 F.Supp. 877, 881 (D.Minn.1985) (applying § 336.2–725(1) to an implied warranty of merchantability claim).

In contrast, Plaintiff contends that her claims are governed by Minnesota's wrongful death statute, which carries a six year limitations period. This statute provides in relevant part that,

[w]hen death is caused by the wrongful act or omission of any person or corporation, the trustee appointed as provided in subdivision 3 may maintain an action therefor *if the decedent might have maintained an action, had the decedent lived, for an injury caused by the wrongful act or omission.* An action to recover damages for a death caused by the alleged professional negligence of a physician, surgeon, dentist, hospital or sanitorium, or an employee of a physician, surgeon, dentist, hospital or sanitorium shall be commenced within the time set forth in section 541.07, subdivision 1. An action to recover damages for a death caused by an intentional act constituting murder may be commenced at any time after the death of the decedent. *Any other action under this sec-*

*tion may be commenced within three years after the date of death provided that the action must be commenced within six years after the act or omission.*

Minn.Stat. § 573.02, subd. 1 (emphasis added). Plaintiff argues that the strict liability and breach of warranty statutes do not apply to wrongful death actions regardless of the precise legal underpinnings of such actions because neither statute mentions wrongful death, whereas the six year wrongful death statute applies broadly to "[a]ny other action" brought by the decedent's trustee pursuant to statute. *Id.* The parties appear to agree that, absent tolling, both claims accrued in October 1993, when Tuttle learned that he was suffering from oral cancer. Accordingly, if the four year statutes apply, Plaintiff's strict liability and breach of warranty claims are time-barred unless the date of accrual can be tolled. If the six year period applies, Plaintiff may maintain her claims without having to rely on tolling principles.

 Because this is a wrongful death action predicated, in part, on strict liability and breach of warranty, all three statutes appear to apply. When statutes appear to conflict, the Court must first try to reconcile them so that effect may be given to each provision. *See* Minn.Stat. § 645.26, subd. 1; *see also Ford v. Emerson Elec. Co.,* 430 N.W.2d 198, 200 (Minn. Ct.App.1988). After careful examination of each statute, the Court concludes that despite its apparent breadth, the wrongful death limitations period cannot apply to Plaintiff's strict liability and warranty claims.

 Simply put, read in its entirety, section 573.02 expressly precludes the revival of actions that would have been time-barred if brought by the decedent had he lived. *See* Minn.Stat. § 573.02, subd. 1 ("[A] trustee may only bring a wrongful death action if the decedent might have maintained the action for per-

sonal injury had he lived.").~ Minnesota case law also supports the conclusion that the wrongful death statute was not designed to revive otherwise time-barred actions. In *DeRogatis v. Mayo Clinic*, 390 N.W.2d 773, 776 (Minn.1986), the Minnesota Supreme Court held that a wrongful death action predicated on alleged medical malpractice begins to run not on the date of death, but when the limitation period for the underlying claim of medical malpractice by the decedent began to run. In so holding, the court recognized that there may be circumstances under which a wrongful death action would be time-barred before the actual death occurred: "[b]y the 1978 amendment the legislature was expressing its intention to bar actions for some deaths caused by wrongful acts or omissions even if they are brought on day of death." *Id.* (quoting *DeCosse v. Armstrong Cork Co.*, 319 N.W.2d 45, 48 (Minn.1982)).

At oral argument, Plaintiff, recognizing the preclusive effect of such language, argued that Tuttle could have brought suit had he lived because the strict liability and breach of warranty accrual dates would have been tolled under the doctrines of fraudulent concealment and continuing wrong. Absent tolling, Tuttle's personal injury claims would have expired in October 1997, four years after he learned of his illness and simultaneously stopped using smokeless tobacco.

 Under Minnesota law, "it has been determined that ignorance of a cause of action not involving continuing negligence or trespass, or fraud on the part of the defendant, does not toll the accrual of a cause of actions [sic]." *Dalton v. Dow Chem. Co.*, 280 Minn. 147, 158 N.W.2d 580, 584 (1968). "This is upon the theory that ignorance is the result of want of diligence and the party cannot take advantage of his own fault." *Schmucking v. Mayo*, 183 Minn. 37, 235 N.W. 633 (1931). However, there is a "real distinction between ignorance and concealment," the latter being the fault of the person facing liability. *Id.*

Moreover, because "[f]raud is bad, it should not be permitted to go unchecked anywhere, and justice should always be able to penetrate its armor." *Id.* at 634. Therefore, where relief is sought on the basis of fraud, accrual of the statute of limitations is tolled until the plaintiff discovers the fraud. *See id.; Dalton*, 158 N.W.2d at 584.

 Defendants argue that the facts which form the basis of Plaintiff's strict liability and warranty claims were not concealed from Tuttle. The Court agrees. At the time Tuttle was informed of his illness, he was apparently already aware of smokeless tobacco's harmful effects and its likely connection to his illness. According to Plaintiff, Tuttle promptly stopped using smokeless tobacco upon learning of his illness and even participated in a 1994 news conference in which he attributed his cancer to his use of smokeless tobacco. (*See* Compl. ¶ 17; Wivell Aff.Ex. 8.) Additionally, since 1987, warning labels have been required by federal law to be affixed to smokeless tobacco products such as those purchased by Tuttle. Although, as Plaintiff notes, federally mandated warnings do not preempt products liability suits arising out of state law, the Court may consider such warnings when determining whether to toll a particular statute of limitations. If not time-barred, Plaintiff could proceed with her strict liability and breach of warranty suits notwithstanding the federal act mandating warning labels. Preemption does not, however, affect tolling analysis.

 Plaintiff also argues that the warning may not serve as conclusive proof that Tuttle knew that smokeless tobacco could be harmful to his health. Even if true, Plaintiff's Complaint and exhibits provide sufficient information with which to conclude that Tuttle was aware of the connection between his illness and his use of smokeless tobacco. (*See* Compl. ¶ 17; Wivell Aff.Ex. 8.) With that information, he could have proceeded with a strict lia-

bility and breach of warranty suit against Defendants before his death and before the limitation periods expired. Accordingly, Plaintiff's fraudulent concealment argument fails.

Plaintiff also seeks to toll the statute of limitations pursuant to the continuing wrong doctrine, under which a claim does not accrue until the continuing wrongdoing ceases. *See Mille Lacs Band of Chippewa Indians v. Minnesota,* 853 F.Supp. 1118, 1126 (D.Minn.1994). Defendants argue that even if this doctrine applies, Plaintiff's claim remains time-barred because the alleged continuing wrong against Tuttle ended in October 1993, when he learned of his illness and stopped using smokeless tobacco.

■■■ Minnesota courts have been careful to distinguish between a continuing wrong and the continuing effect from tortious conduct, the latter being inadequate for tolling purposes. *See Sigurdson v. Isanti County,* 448 N.W.2d 62, 67 (Minn. 1989) ("[I]f a mere continuation of effect will extend the limitation period, the statute of limitations would be effectively emasculated."). When Tuttle's exposure to smokeless tobacco ceased in October 1993, the wrong against him also ceased. *See Dalton,* 158 N.W.2d at 585. Therefore, Plaintiff's argument is really one of continuing effect rather than continuing violation, and as such, it must fail.

Because Tuttle would have been unable to bring strict liability and breach of warranty claims after October 1997, the wrongful death statute of limitations cannot apply to Plaintiff's strict liability and warranty claims. *See* Minn.Stat. § 573.02, subd. 1. Instead, the Court must turn directly to the strict liability and breach of warranty limitations periods to determine whether Plaintiff may maintain those claims. For the reasons just discussed, the Court concludes that the applicable limitations periods have run. The accrual dates, which cannot be tolled, expired in October, 1997, almost two years before the present case was filed. Plaintiff's strict liability and breach of warranty claims are accordingly dismissed with prejudice.

### 2. *Pleading Fraud with Particularity.*

■■■ Defendants argue that Plaintiff's common law and statutory fraud claims under Minn.Stat. §§ 325F.69, 325D.13, 325D.44, and 325F.67 must be dismissed because Plaintiff failed to plead them with particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. Plaintiff acknowledges that her common law fraud claim is subject to 9(b)'s heightened pleading requirements, but denies that her statutory fraud claims fall within its ambit. In particular, Plaintiff argues that because Minnesota's consumer fraud statutes have been construed more broadly than common law fraud, *see LeSage v. Norwest Bank Calhoun–Isles,* 409 N.W.2d 536, 539 (Minn.App.1987), 9(b) does not apply. The Court strongly disagrees. Notwithstanding the relative breadth of the consumer protection statutes, Rule 9(b) applies where, as here, the gravamen of the complaint is fraud. *See Marvin Lumber v. PPG Indus., Inc.,* Civil No. 3–94–545, (D.Minn. March 17, 1995); *see also United States v. Napco, Int'l, Inc.,* 835 F.Supp. 493, 495 (D.Minn.1993); *Toner v. Allstate Ins. Co.,* 821 F.Supp. 276, 283–84 (D.Del.1993).

Rule 9(b) specifically requires that "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be pled with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." In order to meet 9(b)'s heightened pleading requirement, a plaintiff must set forth the "who, what, when, where, and how: the first paragraph of any newspaper story." *Parnes v, Gateway 2000, Inc.,* 122 F.3d 539, 549–50 (8th Cir.1997). "Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."

*Commercial Property Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir.1995) (internal citation omitted).

▮ In this case, Plaintiff has made nothing more than sweeping conclusory allegations of fraudulent conduct on the part of Defendants without any semblance of the particularity required by 9(b). For example, in pleading the statutory fraud claims Plaintiff alleges that Defendants' wrongful conduct includes:

> Defendants' fraudulent, misleading, and deceptive statements and practices relating to the use of smokeless tobacco and health, including intentional misrepresentations that there is no causal connection between the use of smokeless tobacco and adverse health effects and that smokeless tobacco is not addictive.

(Compl.¶¶ 71, 76, 81, 86.) Plaintiff's allegations with respect to common law fraud are similarly lacking in specificity:

> Defendants' wrongful conduct includes, by way of example:
>
> a. Defendants' fraudulent, misleading, and deceptive statements and practices relating to the use of smokeless tobacco and health, including fraudulent representations that there is no causal connection between the use of smokeless tobacco and adverse health effects.

(Compl.¶ 63.) Such allegations utterly "fail to apprise defendants of the claims against them and the acts relied upon as constituting the fraud charged." *Paulucci v. William Morris Agency, Inc.*, 952 F.Supp. 1335, 1342 (D.Minn.1997) (quoting *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir.1982)). The Court therefore dismisses Plaintiff's common law and statutory fraud claims without prejudice and with leave to amend. Plaintiff has sixty days following the entry of this order to amend her Com-

plaint in accordance with Rule 9(b). If the Complaint is not amended within that time, Counts IV, VI, VII, VIII, and IX of Plaintiff's Complaint will be dismissed with prejudice for failure to state a claim.[3]

### C. STC's Motion to Dismiss.

Like the manufacturing Defendants, STC urges the Court to dismiss Plaintiff's Complaint against it under Rules 12(b)(6) and 9(b). STC has explicitly adopted the arguments of the manufacturing Defendants and makes several additional arguments based on its status as a non-manufacturing Defendant. The Court will not address the particular arguments of STC as they relate to those issues already decided.[4] However, STC also urges the Court to dismiss Plaintiff's negligence claim, which was not challenged by the manufacturing Defendants. As above, for the purposes of deciding this motion, the Court will take all facts alleged in Plaintiff's Complaint as true. *See Westcott*, 901 F.2d at 1488.

▮ In order to maintain a claim for negligence, Plaintiff must establish the following familiar elements: 1) the existence of a duty; 2) breach of that duty; 3) proximate cause between the breach of duty and Plaintiff's injury; and 4) actual injury to Plaintiff. *See Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 157 (Minn. 1982). STC argues that Plaintiff cannot meet this test because it had no duty to Tuttle or Plaintiff. Plaintiff responds that "having assumed a duty to speak publicly about the risks of chewing smokeless tobacco [STC] has a duty to act non-negligently." (Pl.'s Mem. in Opp'n to STC's Motion to Dismiss at 6.) Plaintiff further alleges that STC disseminated misleading information to promote the economic inter-

---

**3.** The Court is well-aware of the several other arguments made by Defendants with respect to Plaintiff's deceptive trade practices claim. Because that claim is dismissed for failure to plead with particularity, those arguments will not be addressed at this time.

**4.** Those counts dismissed without prejudice as to the manufacturing defendants are also dismissed without prejudice as to STC.

ests of the tobacco manufacturers. (*See id.*)

 "It is well established that one who voluntarily assumes a duty must exercise reasonable care or he will be responsible for damages resulting from his failure to do so." *Isler v. Burman,* 305 Minn. 288, 232 N.W.2d 818, 822 (1975). Trade associations are not ordinarily found to have assumed a duty to the purchasing public unless they have some measure control over their manufacturing members or some direct involvement in the development or marketing the product. *See Evenson v. Osmose Wood Preserving, Inc.,* 760 F.Supp. 1345, 1349 (S.D.Ind.1990) (holding that the defendant trade association, which did not manufacture, sell, distribute, design, test, conduct safety research on, or set standards for the product, could not be held to have owed a duty to the plaintiff); *Harmon v. National Automotive Parts Ass'n,* 720 F.Supp. 79, 82 (N.D.Miss.1989) (finding that absent direct involvement in the development and marketing of a product, a trade association does not have a duty to the purchasers of that product). Because Plaintiff has not pleaded such a relationship between STC and the manufacturing defendants in her Complaint, the Court dismisses the negligence claim against STC at this time with leave to amend. As above, Plaintiff has sixty days from the date of entry of this Order to amend her Complaint consistent with the terms of this Order. Should Plaintiff fail to so amend, Count I will be dismissed as to STC with prejudice for failure to state a claim.

## CONCLUSION

For the foregoing reasons, and upon all of the files, records, and proceedings herein, the Court dismisses NTFC from this lawsuit, grants Worldwide's Motion to Dismiss for Lack of Personal Jurisdiction, grants Certain Defendants' Motion to Dismiss, and grants STC's Motion to Dismiss.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant NTFC is **DISMISSED WITH PREJUDICE;**

2. Defendant NTFC's Motion to Dismiss for Lack of Personal Jurisdiction (Clerk Doc. No. 37) is **DENIED** as moot;

3. Defendant Worldwide's Motion to Dismiss for Lack of Personal Jurisdiction (Clerk Doc. No. 40) is **GRANTED;**

4. Defendant Worldwide is **DISMISSED WITH PREJUDICE;**

5. Certain Defendants' Motion to Dismiss (Clerk Doc. No. 10) is **GRANTED;**

6. Defendant STC's Motion to Dismiss (Clerk Doc. No. 13) is **GRANTED;**

7. Counts II and III of Plaintiff's Complaint are **DISMISSED WITH PREJUDICE;**

8. Counts IV, VI, VII, VIII, and IX of Plaintiff's Complaint are **DISMISSED WITHOUT PREJUDICE;**

9. Count I of Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE** as to Defendant STC; and

10. Plaintiff has sixty days from the date of entry of this Order to amend her Complaint in accordance with the terms of this Order.